[No. 4535–II.  Division Two.  January 25, 1982.]

WASHINGTON PUBLIC EMPLOYEES ASSOCIATION, ET AL,
*Appellants*, v. COMMUNITY COLLEGE DISTRICT
No. 9, ET AL, *Respondents*.

*Mark S. Lyon,* for appellants.

*Kenneth O. Eikenberry, Attorney General, Richard M. Montecucco, Senior Assistant,* and *Steven P. Recor, Assistant,* for respondents.

PETRICH, A.C.J.—This is an appeal by the Washington Public Employees Association (WPEA) and John P. Clayton, from an order of the Superior Court denying their petition for a writ of mandamus compelling enforcement of an order of the Higher Education Personnel Board (HEP Board) finding that Highline Community College committed an unfair labor practice. Because the HEP Board did not apply the appropriate standard in determining that an unfair labor practice existed, we remand the case to the HEP Board for further proceedings.

John P. Clayton was employed by Highline Community College as an Accountant III (chief accountant) from June 1968 until August 1977. On August 9, 1977, Clayton received notice that he was being suspended without pay effective August 9, 1977, and terminated effective August 23, 1977, because of continued neglect of duty, inefficiency, and incompetence. Clayton challenged the suspension and termination, filing both an appeal under RCW 28B.16.120 and WAC 251-12, and an unfair labor practice complaint pursuant to RCW 41.56.140. After being advised that the HEP Board would not hear the unfair labor practice charge while an appeal was pending, *see* WAC 251-14-090, Clayton withdrew his appeal. Clayton did not seek judicial review of the HEP Board's ruling prohibiting him from pursuing both his appeal and unfair labor practice complaint simultaneously.

Hearings were held on the unfair labor practice complaint. At the hearings evidence was introduced estab-

lishing:

1. Dr. Eade, Clayton's immediate supervisor, noted problems with Clayton's work as early as 1974.

2. The Highline Community College accounting department began using a new computer system in July 1975; the change in systems caused some problems.

3. In December 1975, Dr. Eade learned that the general ledger had been out of balance for 3 months. A trainer was called in to assist Clayton in balancing the ledger.

4. On March 19, 1976, Don Slaughter, Highline Business Manager, published and distributed a memorandum entitled "The Union Shop—Have You Thought It Through" to all classified employees.

5. During the week of March 19, 1976, Clayton refused to sign an antiunion statement being circulated by Dr. Eade's secretary.

6. On March 22, 1976, Dr. Eade, a member of the bargaining unit, issued a memorandum entitled "Grumpy Editorial Comment."

7. Prior to the election Dr. Eade asked Clayton where he stood on the union shop issue. When Clayton told Dr. Eade that he favored the adoption of a union shop, Dr. Eade became visibly disturbed.

8. The election was held on March 25, 1976. On April 5, 1976, the WPEA was certified as the union shop representative.

9. Prior to May 10, 1976, Eade met with Clayton and discussed six concerns that Eade had about Clayton's work. Eade testified that Clayton acknowledged that he had problems but felt that he could solve them.

10. On May 10, 1976, Eade sent Clayton a memorandum requesting that Clayton give a 30–minute presentation on May 13, 1976, to Eade and Slaughter on the efforts that were necessary to balance the new accounting system. Clayton testified that there was no way he could collect the information requested within the time frame granted. Eade testified that such knowledge should have been within Clayton's immediate grasp and that Clayton had not indi-

cated to him that he would not have enough time to prepare for such presentation. After the meeting, Eade told Clayton that his presentation had not been responsive.

11. During the summer of 1976, Clayton missed 6 weeks of work as a result of a cancer operation.

12. During 1976 and 1977, Clayton committed a number of significant accounting errors.

Based on the testimony and evidence taken at the hearings, the HEP Board found that Clayton's termination was "a contrived, anti–union action in violation of WAC 251–14–070(1)" and ordered Clayton's reinstatement. Highline Community College did not comply with the Board's order and the WPEA and Clayton applied to the Thurston County Superior Court for a writ of mandamus compelling enforcement of the Board's order. The trial court found that the HEP Board's order was "clearly erroneous" and denied the writ. Clayton now seeks review both of the order denying the writ and his request that the case be remanded to the HEP Board with directions that the HEP Board hear his original appeal.

## STANDARD OF REVIEW

Unfair labor practice complaints by community college employees are governed by RCW 41.56.140 through 41.56.190.[1] Section 41.56.190 grants a party to a HEP Board proceeding the power to file a petition with the superior court for the enforcement of a board order and for temporary relief or restraining order. The same section grants the superior court reviewing a board order the power to order temporary relief, enter a restraining order, or enter a decree enforcing, modifying and enforcing as so modified,

---

[1] RCW 28B.16.230:

"Unfair labor practices provisions applicable to chapter. Each and every provision of RCW 41.56.140 through 41.56.190 shall be applicable to the state higher education personnel law and the higher education personnel board, or its designee, whose final decision shall be appealable to the higher education personnel board, which is granted all powers and authority granted to the department of labor and industries by RCW 41.56.140 through 41.56.190. [1973 c 62 § 6; 1969 ex.s. c 215 § 14. Formerly RCW 28.75.230.]"

or setting aside in whole or in part the order of the Board. The standard of review to be applied by the superior court in ruling on a petition for enforcement of a HEP Board order is not, however, specified anywhere in the sections referred to above. This is in contrast to RCW 41.59, the Educational Employment Relations Act governing school district employees, which provides that the right of judicial review provided by RCW 34.04 (the administrative procedure act) shall be applicable to all actions authorized by the chapter, which actions include unfair labor practice charges. *See* RCW 41.59.160.

Three standards of review are potentially applicable: the standard set forth in the administrative procedure act (APA);[2] the standard set forth in the State Higher Education Personnel Law (HEP law);[3] and the standard used by the United States Court of Appeals in reviewing decisions of the National Labor Relations Board (NLRB).

The parties have suggested that the proceedings are governed by the APA, RCW 34.04. The suggestion has some merit. RCW 34.04.150 specifically lists those agencies not covered by the APA and then states in part: "[a]ll other agencies, whether or not formerly specifically excluded from the provisions of all or any part of the administrative procedure act, shall be subject to the entire act." Although institutions of higher learning defined by RCW 28B.19.020 are excluded from the act, the Higher Education Personnel Board, the state agency whose proceedings we are asked to review, is not excluded from coverage.

The right of review granted by the APA is, however, broader than the right of review authorized by RCW 41.56-.190. Section 34.04.130 of the administrative procedure act grants any *person* aggrieved by a final decision in a contested case the right to judicial review. In contrast, under RCW 41.56.190, a party's right to judicial review is limited

---

[2]RCW 34.04.130(6).

[3]RCW 28B.16.150(1)(a), (e).

to the right to petition the superior court for an order enforcing the order of the Board. Thus, if we were to apply the administrative procedure act, it would be necessary to either expand the right of review granted under RCW 41.56.190, or hold that all the rights granted by the APA are not applicable to unfair labor practice complaints. The second alternative conflicts with the language in RCW 34.04.150 making agencies "subject to the *entire* act." (Italics ours.)

Arguments advocating the use of HEP law standard also have merit. In *Olson v. University of Wash.*, 89 Wn.2d 558, 573 P.2d 1308 (1978), our Supreme Court held that proceedings before the HEP Board are not subject to the administrative procedure act and that the provisions of the State Higher Education Personnel Law, specifically RCW 28B.16.120–.160, govern review by the court. However, the court was there dealing with disciplinary proceedings of a university employee which are specifically covered in the State Higher Education Personnel Law, and not an unfair labor practice proceeding.

Like the APA, the right of review granted by HEP law is broader than the right of review authorized by RCW 41.56-.190, and its use is subject to the same criticism.

If neither the APA nor the HEP law applies, a reviewing court might consider the standard used by the United States Court of Appeals in reviewing NLRB decisions. The Supreme Court has ruled that decisions construing the National Labor Relations Act (NLRA), while not controlling, are persuasive in interpreting state labor acts which are similar or based upon the NLRA. *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees*, 93 Wn.2d 60, 605 P.2d 1252 (1980).

Section 10(e) (29 U.S.C. § 160(e)) of the NLRA is substantially similar to RCW 41.56.190. Like RCW 41.56.190, section 10(d) of the act limits a party's right to the right to file a petition for enforcement of an NLRB order. In addition, the power of the reviewing court, the United States Court of Appeals, is limited to the power to grant tempor-

ary relief or a temporary restraining order and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the NLRB. However, unlike RCW 41.56.190, section 10(e) does set forth the standard of review to be used by courts in reviewing factual determinations of the NLRB. Section 10(e) provides that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." *Allied Chem. Workers Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 30 L. Ed. 2d 341, 92 S. Ct. 383 (1971). However, it is unlikely that the difference is significant enough to prevent the courts of this state from electing to apply the standard of review set forth in section 10(e) of the NLRA.

Although at some point it will be necessary for the legislature or the courts to determine the standard for judicial review of orders of the HEP Board in unfair labor practice cases, we find it unnecessary to decide the issue at this time. In this case, we are not concerned with the degree of judicial deference accorded to an administrative agency in resolving factual issues or the application of the agency's special expertise in interpreting the factual or legal issue involved. The issue, rather, is whether the HEP Board applied the appropriate legal standard in determining that Highline Community College committed an unfair labor practice. This determination is peculiarly within the province of the court. For the reasons set forth below, this court finds that the Board did not apply the proper standard. Thus, applying either of the standards of review discussed above, the Superior Court, while stating the wrong reason, acted properly when it refused to grant an order enforcing the decision of the HEP Board.

> *Legal standard to be applied in unfair labor practice cases alleging discriminatory discharge.*

Complaints alleging that an employer's discharge of an employee constitutes an unfair labor practice fall into three

categories: (1) cases in which the employer asserts no legitimate ground for discharge; (2) cases in which the employer's asserted justification for discharge is a sham and no legitimate business justification for discharge in fact exists (pretextual firings); and (3) cases in which there is both a legitimate and impermissible reason for the discharge (dual motive discharges). The first two types of discharge constitute unfair labor practices. The third type may or may not constitute an unfair labor practice.

The NLRB and United States Court of Appeals have applied several different tests in determining whether a particular discharge constitutes an unfair labor practice. Up until August 1980, the NLRB applied an "in part" test in dual motive cases. *Wright Line,* 251 N.L.R.B. 1083 (1980); *Youngstown Osteopathic Hosp. Ass'n,* 224 N.L.R.B. 574 (1976). Under the "in part" test, if the discharge was motivated "in part" by protected activities of the employee, the discharge constitutes an unfair labor practice. This is true even if a legitimate business reason for the discharge also exists. A number of circuits have refused, however, to apply this test stating that the test ignores the legitimate business motives of the employer and places the union activist in an almost impregnable position once antiunion animus is established. *NLRB v. Billen Shoe Co.,* 397 F.2d 801 (1st Cir. 1968); *NLRB v. Patrick Plaza Dodge, Inc.,* 522 F.2d 804 (4th Cir. 1975); *Cain's Coffee Co. v. NLRB,* 404 F.2d 1172 (10th Cir. 1968).

Instead of the "in part" test, the First Circuit, at least until recently, applied a "dominant motive" test. Under the First Circuit test, if both a good and bad reason for the discharge exist, the Board, when it seeks an enforcement order, has to establish that the discharge would not have occurred but for the employee's union activity or the employer's antiunion animus. *NLRB v. Fibers Int'l Corp.,* 439 F.2d 1311 (1st Cir. 1971); *NLRB v. Gotham Indus., Inc.,* 406 F.2d 1306 (1st Cir. 1969). The Third and Fifth Circuits have held that an employer commits an unfair labor practice if antiunion animus is the "real reason" or

"real motive" for the discharge. *Gould, Inc. v. NLRB,* 612 F.2d 728 (3d Cir. 1979); *Berry Schools v. NLRB,* 627 F.2d 692 (5th Cir. 1980). The Seventh Circuit has applied both the NLRB's "in part" test and an "any significant part" test. *See Nacker Packing Co. v. NLRB,* 615 F.2d 456 (7th Cir. 1980); *NLRB v. Pfizer, Inc.,* 629 F.2d 1272 (7th Cir. 1980). The Ninth Circuit has applied both a "dominant motive" and "but for" test. *NLRB v. Adams Delivery Serv., Inc.,* 623 F.2d 96 (9th Cir. 1980); *NLRB v. Sacramento Clinical Laboratory, Inc.,* 623 F.2d 110 (9th Cir. 1980). The Tenth Circuit looks to see whether the "contributing motivation" in a discharge was an antiunion animus. *Coors Container Co. v. NLRB,* 628 F.2d 1283 (10th Cir. 1980).

    In August 1980, the NLRB adopted a new test. *See Wright Line, supra.* The new test, modeled after the test established by the United States Supreme Court in *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977), to determine whether a teacher's contract was not renewed due to the teacher's constitutionally protected conduct, initially places the burden on the employee to show that his conduct was protected and that such conduct was a substantial or motivating factor in the employer's decision to discharge him. Once this is accomplished, the burden shifts to the employer to demonstrate that it would have discharged the employee even absent the protected conduct. The test effectively balances the interest of the employee in protected activity against the interest of the employer in operating his business in a particular manner. As the NLRB stated in *Wright Line,* 251 N.L.R.B. at 1089:

> Under the *Mt. Healthy* test, the aggrieved employee is afforded protection since he or she is only required initially to show that protected activities played a role in the employer's decision. Also, the employer is provided with a formal framework within which to establish its asserted legitimate justification. In this context, it is the employer which has "to make the proof." Under this analysis, should the employer be able to demonstrate that the discipline or other action would have occurred

absent protected activities, the employee cannot justly complain if the employer's action is upheld. Similarly, if the employer cannot make the necessary showing, it should not be heard to object to the employee's being made whole because its action will have been found to have been motivated by an unlawful consideration in a manner consistent with congressional intent, Supreme Court precedent, and established Board processes.

In this case, neither the HEP Board nor the Superior Court specifically stated which standard was used in deciding complaints filed under RCW 41.56.140 through 41.56-.190. The HEP Board simply found "the *preponderance of the credible evidence* indicates that the *substantive reason* for Mr. Clayton's ultimate dismissal was his support of the Washington Public Employees Association and the union shop condition . . ." (Italics ours.)

It is the opinion of this court that the appropriate legal standard is the *Mount Healthy* standard adopted by the NLRB in *Wright Line*. The in–part test previously applied by the NLRB did not adequately protect the employer's rights; the dominant motive and other similar tests did not protect the legitimate interests of the employee. In contrast, the *Mount Healthy* test, if properly applied, provides an effective mechanism for balancing the legitimate interests of both the employer and the employee. *Accord, NLRB v. Nevis Indus., Inc.,* 647 F.2d 905 (9th Cir. 1981); *Peavey Co. v. NLRB,* 648 F.2d 460 (7th Cir. 1981); *Statler Indus., Inc. v. NLRB,* 644 F.2d 902 (1st Cir. 1981).

> *Remand to the HEP Board for consideration of evidence and testimony in light of appropriate legal standard.*

■ Because the HEP Board did not apply the appropriate legal standard, the trial court acted properly in refusing to enforce the Board's order. Clayton is, however, entitled to some relief. When an administrative agency applies an inappropriate legal standard, the weight of authority dictates that the reviewing court remand the case to the administrative agency with instructions to apply the appro-

priate legal standard. *See NLRB v. Gulf States Canners, Inc.,* 585 F.2d 757 (5th Cir. 1978); *Blackman–Uhler Chem. Div., Synalloy Corp. v. NLRB,* 561 F.2d 1118 (4th Cir. 1977); *NLRB v. Mosey Mfg. Co.,* 595 F.2d 375 (7th Cir. 1979). *See also NLRB v. Food Store Employees Local 347,* 417 U.S. 1, 40 L. Ed. 2d 612, 94 S. Ct. 2074 (1974). A new hearing will not be required. The HEP Board need only evaluate the testimony and evidence received at the previous hearings in light of the legal standard we have set forth in this opinion.

*Remand to hear appeal under RCW 28B.16.120.*

In addition to asking this court to overturn the judgment of the trial court, the WPEA and Clayton ask this court to remand the case to the HEP Board with instruction that the HEP Board hear the appeal originally filed by Clayton under RCW 28B.16.120. As noted above, Clayton originally filed an appeal under RCW 28B.16.120 and an unfair labor practice complaint under RCW 41.56.140. Although Clayton withdrew his appeal only after being told by the HEP Board that the Board would not consider his unfair labor practice complaint while he had an appeal pending, we have been unable to locate any state or federal authority indicating that this court has the authority to remand a case for a hearing on a new cause of action. Remands are granted only where the Board applied an incorrect legal standard for the purpose of having the Board correct irregularities in procedure, to supply deficiencies in the record to make additional essential findings to pass on and determine a material or vital issue where competent and material evidence had been excluded, or to supply findings in place of those attacked as invalid. *Ford Motor Co. v. NLRB,* 305 U.S. 364, 83 L. Ed. 221, 59 S. Ct. 301 (1939). If the WPEA and Clayton believed that the HEP Board acted improperly in refusing to hear Clayton's unfair labor practice complaint while Clayton had an appeal pending, they should have then sought judicial review of the Board's ruling. By failing to do so, Clayton and the WPEA waived

their right to pursue such an appeal.

Accordingly, we decline enforcement of the Board's order without prejudice to a renewed application for enforcement after the additional proceedings that we direct. We remand the case to the Board solely for a determination of the unfair labor practice in accordance with the standards announced in this opinion.

PETRIE, J., and JOHNSON, J. Pro Tem., concur.

Reconsideration denied April 5, 1982.