[No. 5577–9–III. Division Three. July 24, 1984.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL
No. 469, *Appellant,* v. THE PUBLIC EMPLOYMENT
RELATIONS COMMISSION, ET AL,
*Respondents.*

*Kenneth J. Pedersen, David E. Williams,* and *Critchlow & Williams,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Richard A. Heath, Senior Assistant, Otto G. Klein III,* and *Syrdal, Danelo, Klein & Myre,* for respondents.

THOMPSON, J.—The International Association of Fire-fighters, Local 469 (the Union) appeals the Public Employment Relations Commission's (PERC) reversal of its hearing examiner on the issues of waiver and "direct dealing", in favor of the City of Yakima.

The Union is a certified collective bargaining representative for fire fighters in the city. Negotiations between the Union and the City were undertaken between June and August 1979, for the 1980 contract. In August 1979, the City began to formulate internally a proposal to remove responsibility for fire inspection from the fire department. This plan involved the transfer of the 4–member Bureau of Fire Prevention (BFP) out of the fire department bargaining unit effective January 1980. Mr. Wittenberg, assistant city manager, served as the City's chief negotiator. During negotiations for the 1980 contract, Mr. Wittenberg was aware of the City's plan but failed to inform the Union.

It was not until November 20, 1979, that the City made public its plan regarding the BFP at a workshop session on the city budget. On November 27, 1979, a public hearing was held on the budget and Mr. Morehouse, the Union's president, spoke in opposition to the City's proposal. On November 29, 1979, Mr. Wittenberg met with members of the BFP individually to explain the proposal and its effect on their future employment with the City. The following day the Union was informed of this meeting by one of the fire inspectors. In a letter dated November 30, 1979, Mr. Morehouse informed the city manager's office that the Union objected to the dismantling of the BFP and would

"resist by *all* means accorded or permitted by law". The Union also participated in gathering signatures on petitions rejecting any proposed cuts in the fire department's manpower.

On December 18, 1979, the plan was officially adopted by the City Council with its approval of the 1980 budget. The final signing of the 1980 contract between the Union and the City occurred on December 21, 1979. On December 28, 1979, the Union commenced an action to stay implementation of the City's plan until the matter could be arbitrated. Subsequently, the Union filed a complaint with PERC alleging the City had violated RCW 41.56.140(1), (4),[1] by refusing to bargain over the dismantling of the BFP and providing false information to the Union regarding the cost of health insurance.[2] The Union's posthearing brief contained the same allegations.

A hearing was held before a PERC examiner in May 1980. On April 8, 1981, the examiner issued his decision in which he found the Union had not knowingly waived its right to bargain, and the City had committed unfair labor practices in refusing to bargain and in "direct dealing" with members of the BFP. The City timely filed a petition for review with PERC, and PERC reversed the hearing examiner on November 13, 1981. The Union brings this appeal following the trial court's affirmation of the PERC decision.

The administrative procedure act (APA), RCW 34.04.010 *et seq.,* is controlling in the review of administrative actions in contested cases. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 322–23, 646 P.2d 113 (1982). Thus, our review, like that of the superior court, is under RCW

---

[1]RCW 41.56.140(1), (4) provide:

"It shall be an unfair labor practice for a public employer:

"(1) to interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter;

". . .

"(4) To refuse to engage in collective bargaining."

[2]This second allegation was dismissed by both the hearing examiner and PERC. The Union does not appeal this decision.

34.04.130(6), which provides in part:

> (6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> . . .
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
> (f) arbitrary or capricious.

■ Review of administrative decisions is limited to the record of the administrative tribunal itself, not to that of the superior court. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 440, 680 P.2d 40 (1984). The *Renton* court enunciated guidelines for reviewing courts to follow:

> An administrative decision will be upheld on factual determinations under the clearly erroneous standard of RCW 34.04.130(6)(e) unless the court's review of the entire record leaves it with the definite and firm conviction that a mistake has been made. When reviewing questions of law under the error of law standard of RCW 34.04.130(6)(d), an appellate court may substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight. In an appeal of an administrative decision involving a mixed question of law and fact, the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency.

(Citations omitted.) *Renton Educ. Ass'n v. Public Empl. Relations Comm'n, supra* at 440–41 (citing *Franklin Cy. Sheriff's Office v. Sellers, supra*). Thus, under the APA, PERC's findings of fact as well as its expertise in interpreting labor relations law should be accorded "great deference". *Public Empl. Relations Comm'n v. Kennewick,* 99 Wn.2d 832, 842, 664 P.2d 1240 (1983).

Although not binding on this court, federal courts reviewing National Labor Relations Board (NLRB) deci-

sions follow the rule that the standard of review remains the same even where the NLRB and administrative law judge make contrary findings. "[T]he deference accorded fact findings runs in favor of the Board, but the administrative law judge's findings as part of the record must be weighed along with other opposing evidence, against the evidence supporting the Board's decision." *NLRB v. Brooks Cameras, Inc.*, 691 F.2d 912, 915 (9th Cir. 1982).

We thus come to the question of whether PERC erroneously overturned the hearing examiner on the issues of waiver and "direct dealing". The Union contends waiver is a question of law; therefore, review should be under the "error of law" standard, RCW 34.04.130(6)(d).

Washington courts define waiver as an intentional and voluntary relinquishment of a known right. *Panorama Residential Protective Ass'n v. Panorama Corp.*, 97 Wn.2d 23, 28, 640 P.2d 1057 (1982) (citing *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)). Moreover, whether there has been a waiver is a question for the trier of fact. *Bowman v. Webster, supra* at 670. Additionally, federal courts, under the National Labor Relations Act, have treated waiver as a factual question. *NLRB v. Carbonex Coal Co.*, 679 F.2d 200, 204 (10th Cir. 1982).

There is substantial evidence in the record to support PERC's finding that:

> Prior to December 18, 1979, IAFF Local 469 obtained actual knowledge of the proposal to transfer inspection work. The union did not request bargaining on these matters, although it wrote to the city on November 30, 1979, setting forth its disapproval and made public appearances before the city council on two occasions to protest the change.

The PERC decision precludes any finding that the City's plan was presented to the Union as a fait accompli, as the Union contends, since a finding of waiver implies sufficient time to request meaningful negotiation. Although we may be more favorably inclined to the outcome afforded by the hearing examiner's decision, "due deference must be given

to the specialized knowledge and expertise of the administrative agency." *Department of Ecology v. Ballard Elks Lodge 827*, 84 Wn.2d 551, 556, 527 P.2d 1121 (1974). We may not simply substitute our judgment for that of PERC because we would take a different view of the evidence. *Franklin Cy. Sheriff's Office v. Sellers, supra* at 325.

■■ Furthermore, we find PERC correctly interpreted RCW 41.56 when it determined the Union had waived its right to bargain by failing to request negotiations over the employee transfer. RCW 41.56.030(4)[3] imposes a mutual obligation on employers and unions to engage in collective bargaining. Collective bargaining as defined in RCW 41.56-.030(4) is patterned after section 8 of the National Labor Relations Act, 29 U.S.C. § 158(d). *See State ex rel. Wash. Fed'n of State Employees v. Board of Trustees*, 93 Wn.2d 60, 67, 605 P.2d 1252 (1980). "In construing state labor acts which appear to be based upon or are similar to the NLRA, decisions under that act, while not controlling, are persuasive." *State ex rel. Wash. Fed'n of State Employees v. Board of Trustees, supra* at 67–68. Even though we are not obliged to follow federal labor law in this case, it is logical to do so. *Public Empl. Relations Comm'n v. Kennewick, supra* at 841.

Both state and federal acts impose a mutual obligation to bargain. The NLRB follows the rule that a union waives its right to bargain if it fails to request negotiations after it had actual knowledge of the employer's intentions and there was sufficient time prior to the implementation date for the Union to meaningfully request negotiations. *See Medicenter, Mid–South Hosp. v. Hotel & Restaurant*

---

[3]RCW 41.56.030(4) defines collective bargaining as:

"'Collective bargaining' means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter."

*Employees Local 847,* 221 N.L.R.B. 670 (1975); *Clarkwood Corp. v. Local 25B & Local 43B, Graphic Arts Int'l Union,* 233 N.L.R.B. 1172 (1977); *International Ladies' Garment Workers Union v. NLRB,* 463 F.2d 907 (D.C. Cir. 1972); *NLRB v. Henry Vogt Mach. Co.,* 718 F.2d 802 (6th Cir. 1983). PERC has developed a body of decisional law based on this rule. *See Renton Educ. Ass'n v. Renton Sch. Dist. 403,* Pub. Empl. Relations Comm'n Dec. 706 EDUC (1979); *General Teamsters Union Local 378 v. Olympia Sch. Dist. 111,* Pub. Empl. Relations Comm'n Dec. 1366 PECB (1982).

Washington case law supports PERC's application of this rule to the present case. In *Spokane Educ. Ass'n v. Barnes,* 83 Wn.2d 366, 517 P.2d 1362 (1974), the court found 4 days adequate notice to require the employee association to request negotiations over the school district's plans for budget reduction. In *Pierce v. Lake Stevens Sch. Dist. 4,* 84 Wn.2d 772, 529 P.2d 810 (1974), the court found the employees' association had waived its right to negotiate the reduction of personnel, where the association took the position that no certified employees should be nonrenewed. In both cases the Washington Supreme Court held: "[I]t was incumbent upon the association to make a timely request for negotiations if it wished to avail itself of the opportunities afforded under [the statute]." *Pierce v. Lake Stevens Sch. Dist. 4, supra* at 787. Although the facts of the instant case present the City in a less sympathetic posture than the employers in the cases cited, we cannot say in view of the entire record before us and the policy enunciated in RCW 41.56.030(4) that PERC's decision is "clearly erroneous", arbitrary or capricious, or a misapplication of the law.

The Union also contends PERC erred in overturning the hearing examiner's decision that the City committed an unfair labor practice by "direct dealing". The Union argues that although express allegations of "direct dealing" did not appear in the Union's complaint or pleadings, this issue was litigated in the hearing; thus, the hearing examiner was justified in formulating findings and conclusions on this issue. The Union points particularly to the testimony in the

record regarding the meeting between Mr. Wittenberg and the members of the BFP in November 1979.

 The APA requires that

the complaint apprise the parties proceeded against of the violations charged. "Evidence without a supporting allegation cannot serve as the basis of a determination of an unfair labor practice." "It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing."

(Citations omitted.) *Montgomery Ward & Co. v. NLRB,* 385 F.2d 760, 763 (8th Cir. 1967); *see also NLRB v. Local 25, Int'l Bhd. of Elec. Workers,* 586 F.2d 959 (2d Cir. 1978). Generally, an administrative law judge's decision on an issue will not be upheld on review if the issue was not raised in the amended complaint, in the briefs, or in oral argument, and no evidence was presented concerning that issue. *NLRB v. Local 25, Int'l Bhd. of Elec. Workers, supra* at 961; *see also NLRB v. Highway & Local Motor Freight Employees, Local 667,* 654 F.2d 254 (6th Cir. 1981). This rule follows the APA requirement that the parties be put sufficiently on notice of the issues to be litigated in the case. "Even where the record contains evidence supporting a remedial order, the court will not grant enforcement in the absence of either a supporting allegation in the complaint or a meaningful opportunity to litigate the underlying issue in the hearing itself." *NLRB v. Blake Constr. Co.,* 663 F.2d 272, 279 (D.C. Cir. 1981). However, where there is sufficient notice and the issue is fully litigated, even though absent from the pleadings, the administrative law judge's decision will be upheld. *NLRB v. Highway & Local Motor Freight Employees, Local 667, supra* at 256.

The question is, therefore, whether the City received sufficient notice that "direct dealing" was an issue to be litigated at the hearing. The Union's argument is based on evidence in the record regarding a meeting between City representatives and the affected employees. PERC, however, concluded the issue to have been "drawn in by an

580

expansive interpretation by the examiner of the pleadings and briefs", and that the parties had not been afforded an opportunity to address themselves to the issue. Since there is substantial evidence in the record to support PERC's decision on this issue, we cannot say that PERC acted arbitrarily and capriciously or was "clearly erroneous" in overturning the hearing examiner on the issue of "direct dealing".

We therefore affirm the PERC decision.

MUNSON, C.J., and McINTURFF, J., concur.

Review denied by Supreme Court October 19, 1984.