IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL A. BOISE, | ) | |
| | ) | No. 33202-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMPLOYMENT SECURITY | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — One circumstance in which an employee who voluntarily quits a

job may still receive unemployment benefits is where the employee's usual work is

changed to work that violates the individual's religious convictions or sincere moral

beliefs. RCW 50.20.050(2)(b)(x). Michael Boise resigned from a sales position shortly

after being hired, ostensibly because of such a work change. Benefits were denied him

by the state employment security department and, on appeal, by its commissioner.

His first petition for judicial review resulted in a superior court order remanding

the administrative decision to the commissioner's review office "to issue a decision after

employing a subjective analysis of whether a change in the conditions of employment

violated a sincerely held moral belief of the petitioner." Clerk's Papers (CP) at 131. In

isolation, the directive was ambiguous, because at least one fact essential to Mr. Boise's

entitlement—that there *had been* a change in his usual work—is an objective, not subjective, determination. On remand, the commissioner found that Mr. Boise's usual work had not changed, an order that the superior court then affirmed. Mr. Boise complains both decisions were contrary to an implicit finding by the superior court, initially, and that there had been a change in his usual work.

The superior court did not engage in fact finding. Its directive did not perfectly express its intent, but it is clear from its order as a whole that the court recognized that the commissioner would objectively analyze whether there had been a change in Mr. Boise's usual work and subjectively analyze only whether the change violated his sincere moral belief. For that reason, and because the commissioner's ultimate order making the required findings is supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Cleary Building Corporation (Cleary) is in the business of selling and constructing manufactured buildings. It hired Michael Boise as a commissioned salesperson on February 1, 2013, at a standard base salary of $580 per week. He signed two documents on the date of hire: a six-page employment agreement and a six-page pay plan. Collectively, they disclosed he was expected to meet a $516,000 annual sales target on a regular basis and that his weekly salary could be reduced if, after 60 days, he failed to meet the target. They also disclosed that in cases where he arranged subcontract work to be performed in connection with a building sale, he must increase the actual cost of the

2

subcontract by a 12 percent minimum markup and, if he increased the actual cost by larger markups (up to 16 percent), he could earn additional "incentive" pay. CP at 86. Mr. Boise claims that although he signed the pay plan on the day he was hired, he did not read it and was provided with a copy of only the signature page. It was the pay plan that disclosed the detail about compensation and compensation reduction.

After being hired and signing the two documents, Mr. Boise was sent to Wisconsin for two weeks of training. He claims it was there that he first learned about the potential for salary reduction and the subcontractor markup practice. At the end of two weeks' training, Mr. Boise notified his branch manager that he was quitting because he could not afford a reduction in the base salary. When he returned the company car the following Monday, the branch manager asked him if he wanted to stay and work through the wage issues. Mr. Boise told his manager that it would not work, because he was not going to be able to add money to subcontracts. In his notice of termination, Mr. Boise marked that he was leaving for "family issues." CP at 75.

Mr. Boise then applied to the Washington State Department of Employment Security (department) for unemployment benefits. On the voluntary quit statement he was required to complete, he stated his main reason for quitting was, "Cleary did not disclose I would lose salary amount if I did not have over $48,000 in sales per month." CP at 61. He wrote that the reasons he gave his employer for quitting were "[p]ersonal-reasons, my concern I would lose salary." *Id.* Asked if he quit due to a "[r]eduction in

3

pay and/or fringe benefits," Mr. Boise marked "Yes." CP at 64.[1] Asked if he quit due to a "[c]hange in customary job duties which was against [his] religious or moral beliefs," Mr. Boise marked "No," and did not answer the question "[h]ow did the change violate your beliefs?" CP at 65. Asked about any work changes (in the event the employee's usual work had changed since the time of hire) Mr. Boise wrote "none." *Id.* Asked if other work factors made it necessary for him to quit, Mr. Boise wrote that Cleary had given him a filthy work car and would not reimburse him for having it cleaned. Nowhere on the form did Mr. Boise state he quit due to moral objections.

After the department denied Mr. Boise's claim for unemployment benefits, he contested the determination, requesting a hearing. At the hearing before an administrative law judge (ALJ), Mr. Boise testified he did not receive the first five pages of the pay plan until sometime during his training in Wisconsin, which began on February 4. He stated he was uncomfortable with marking up subcontractor bids without disclosing the markup to the customer, that Cleary's markup practice was not consistent with his previous experience in the industry, and that he found it morally objectionable. Cleary's witness disagreed with Mr. Boise's claim that its markup practice was atypical, testifying it "is a pretty standard business practice for a general contractor to mark up,

---

[1] Earlier in the proceedings, Mr. Boise contended he was eligible for unemployment benefits because his "usual compensation was reduced by twenty-five percent or more," as provided by RCW 50.20.050(2)(v). He has abandoned that argument.

4

um, the cost or the bids if [sic] their subcontractors." CP at 39. The ALJ affirmed the department's determination, finding that Mr. Boise quit because he was "unhappy with the pay plan." CP at 55, 99-100.

Mr. Boise petitioned for review. Review was delegated by the commissioner to review judge Susan Buckles. She affirmed the ALJ's decision. Addressing Mr. Boise's contention that he had moral objections to Cleary's markup practice, she stated, "we are persuaded that this is a normal practice in the industry, and that claimant's objections are misplaced." CP at 111.

Mr. Boise petitioned for judicial review. In findings of fact, conclusions of law, and an order, the superior court remanded the case to the commissioner's review office. It concluded that the commissioner's finding of fact that "Mr. Boise acknowledged" that the billing practice to which he objected was common was not supported by substantial evidence; that in discounting Mr. Boise's sincere moral belief because the markup practice was customary, the commissioner erroneously applied an objective standard; and that the commissioner "also erred in not making a finding of fact on whether or not there was a change in the usual work, as required by RCW 50.20.050." CP at 130-31. It concluded its remand order with the directive that the commissioner's review office was "to issue a decision after employing a *subjective analysis* of whether a change in the conditions of employment violated a sincerely held moral belief of the petitioner." CP at 131 (emphasis added).

5

The department filed a motion for reconsideration, challenging the superior court's requirement of a subjective analysis.[2] The superior court's letter response denied the motion, but stated:

> The application of RCW 50.20.050(2)(b) requires the examination of three matters: Does the employee have a sincere moral belief? Have work duties changed to where continued employment would offend the employee's sincere moral belief? Was the change in work duties [and] that employee's sincere moral belief the reason for termination of the employment relationship? *The Court agrees that the second and third questions must be analyzed objectively.* . . . The first question, however, must involve a subjective analysis.

CP at 127 (emphasis added).

On remand, review judge Annette Womac did not adopt all the findings of fact contained in the ALJ's initial order. She made some new findings. In a new conclusion of law, she affirmed the denial of benefits, reasoning that, as more fully set forth in her findings, neither Mr. Boise's duties nor conditions of work changed:

> The terms of the employer's subcontract incentive program were clearly set forth in the Payment Plan referenced in the Employment Agreement. Although the claimant chose not to read the Plan before signing the Agreement, he nonetheless was apprised of the employer's practice because he signed a document that explicitly referenced the markup of subcontract bids.

CP at 136-37. She also concluded that despite having read the payment plan on about the

---

[2] The department represents in its appeal brief that it moved for reconsideration on the issue of whether a subjective standard should be used when determining whether a moral belief is sincerely held. Br. of Resp't at 6 n.1. The motion is not in our record.

second day of training, Mr. Boise did not quit until nearly two weeks thereafter, but instead continued to participate in a training program at his employer's expense, something she found "not consistent with an individual whose sincere moral beliefs, viewed subjectively, have been violated." CP at 137.

Mr. Boise again petitioned for judicial review. He argued that by referring only the subjective issue of his sincere moral belief to the commissioner's review office, the superior court implicitly found that a change in usual work *had* occurred, and that the review judge's conclusion to the contrary violated the remand order.

Judicial review was assigned to a different superior court department than had heard the first petition for review. It affirmed the commissioner's decision. Mr. Boise appeals.

## ANALYSIS

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of employment benefit decisions by the commissioner of the employment security department. *Verizon Nw., Inc., v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). "In reviewing administrative action, this court sits in the same position as the superior court, applying the standards of the [ ]APA directly to the record before the agency." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We review the decision of the commissioner, not the underlying decision of

7

the ALJ or the decision of the superior court. *Verizon*, 164 Wn.2d at 915; *Markam Group, Inc., P.S. v. Emp't Sec. Dep't*, 148 Wn. App. 555, 560, 200 P.3d 748 (2009).

A threshold problem with Mr. Boise's assignments of error is that they are couched in terms of trial court error. *See* Br. of Appellant at 1. Reframed as agency error—which is all that we review—they are, in substance, that (1) the commissioner improperly made new findings of fact exceeding the scope of the superior court's remand order; (2) the commissioner failed to undertake further fact finding into whether Mr. Boise subjectively held a sincere moral belief; and (3) the trial court erred in affirming the commissioner's decision. Elsewhere, Mr. Boise argues that four of the commissioner's findings are not supported by substantial evidence. *Id.* at 9-10.

We first address Mr. Boise's first and second assignments of error, which challenge the commissioner's interpretation or application of the law. We then turn to Mr. Boise's challenge to the sufficiency of evidence to support the four findings, including whether Mr. Boise has demonstrated substantial prejudice from any unsupported finding. Our resolution of those challenges will necessarily resolve Mr. Boise's third, catchall assignment of error.

*I. Challenged procedure following remand*

The APA authorizes courts to grant relief from an agency order in an adjudicative proceeding in nine enumerated instances, two of which are that the agency has "erroneously interpreted or applied the law," and that it "has not decided all issues

8

requiring resolution by the agency." RCW 34.05.570(3)(d), (f). Pursuant to this authority, the superior court initially remanded the commissioner's decision for additional agency decision making.

Mr. Boise challenges the commissioner's action following the remand, arguing it exceeded the scope of the remand order by finding that Mr. Boise's usual work had not changed, and it should have, but failed to engage in further fact finding as to Mr. Boise's sincere moral belief. He also suggests, without citation to authority, that "[b]ecause a remand is unlikely to remedy this error, based on the prior actions of the Commissioner," we should reverse and order the department to provide Mr. Boise with unemployment benefits. Br. of Appellant at 7.

We reject the premise that the commissioner exceeded the scope of the remand order. We have already recognized that the superior court's order was imperfectly phrased when it directed the commissioner to "employ a subjective analysis" of some matters that require objective analysis. But when the court's order is read as a whole, it is clear the court intended for the commissioner to address the overlooked factual issue of whether Mr. Boise's usual work had changed.

First, the court's third conclusion of law states that the department "also erred in not making a finding of fact on whether or not there was a change in the usual work, as required by RCW 50.20.050." CP at 131. Second, it directed the commissioner's review office to "issue a decision after employing a subjective analysis of whether $a$ change in

9

the conditions of employment violated a sincerely held moral belief of the petitioner." *Id.* (emphasis added). If it had already been established that conditions of employment had changed, the superior court's order would have called for an analysis of whether "*the* change in the conditions of employment violated a sincerely held moral belief."[3] Any confusion should have been dispelled by the court's statement, in denying the department's motion for reconsideration, that whether "work duties changed to where continued employment would offend the employee's sincere moral belief" and whether that change and resulting offense was "the reason for termination of the employment relationship" must be analyzed objectively. CP at 127.

By making a finding of fact that Mr. Boise's work duties had not changed, then, the commissioner did not erroneously interpret or misapply the law.

Mr. Boise argues the agency also committed error by failing to take additional evidence on the issue of the subjective sincerity of his moral belief. When a court grants relief from an agency order because the agency failed to decide all the issues requiring resolution, the relief may be in the form of a remand for further proceedings. RCW 34.05.570(f); RCW 34.05.574(1). Mr. Boise argues that *Suquamish Tribe v. Central Puget Sound Growth Management Hearings Board*, 156 Wn. App. 743, 778, 235 P.3d

---

[3] The authority of the superior court under the APA includes reviewing whether substantial evidence supports the agency's findings of fact, but does not include making its own findings of fact.

812 (2010) holds that "further proceedings" mean further fact finding proceedings.

In *Suquamish Tribe*, the court remanded for further factual proceedings because the record was not complete enough to conduct the proper analysis. 156 Wn. App. at 769, 777-78. The court never stated that further fact finding proceedings were always required where an agency failed to decide an issue, and common sense suggests the existing agency record might sometimes be sufficient. *Washington Public Employees Association v. Community College District 9*, 31 Wn. App. 203, 213, 642 P.2d 1248 (1982) illustrates as much. In that case, after finding that the administrative agency had applied the wrong legal standard, the court remanded the matter for "additional proceedings," stating: "A new hearing will not be required. The [Higher Education Personnel] Board need only evaluate the testimony and evidence received at the previous hearings in light of the legal standard we have set forth in this opinion." *Id.* at 213-14.

In this case no further fact finding was needed, because the record contained the written agreements identifying the objectionable terms of Mr. Boise's incentive compensation, which he had signed on the first day of his employment. In fact, Mr. Boise has never contended that Cleary's terms and policies changed, but only that he did not learn about them until the second week of employment.

Mr. Boise had also testified to his objections, moral belief, and the actions he took based on his objections and moral belief. "Issu[ing] a decision after employing a

11

subjective analysis," as ordered by the court, did not require taking further evidence. CP at 131.

## II. Only one of the commissioner's challenged findings lacks substantial support in the record, and Mr. Boise fails to demonstrate any resulting prejudice

Mr. Boise argues that the four findings of fact by the commissioner were not supported by substantial evidence. A court shall grant relief from an agency order in an adjudicative proceeding if it determines the agency's order is not supported by evidence that is substantial when viewed in light of the whole record, but only if the person seeking judicial relief has been substantially prejudiced by the lack of evidentiary support. RCW 34.05.570(3)(e), (1)(d).

Substantial evidence supports three of the four findings challenged by Mr. Boise. But even if none of the four was supported by substantial evidence, the lack of evidentiary support would not be prejudicial because a critical fact remains: no change in Mr. Boise's usual work occurred. For his voluntary quit not to disqualify him from benefits, that is an essential element of the exemption on which he relies.

We nonetheless briefly address the sufficiency of the evidence to support three of the four findings that he challenges:[4] the findings that (1) Mr. Boise quit because of a disagreement with pay; (2) he continued working for Cleary for two weeks with

---

[4] The department concedes that evidence in the record does not support the challenged finding that Mr. Boise was reimbursed for cleaning his company car.

12

knowledge of the subcontract incentive plan; and (3) markups are common in the construction industry. Br. of Appellant at 9-11.

Review of the commissioner's findings of fact is for substantial evidence in light of the whole record. RCW 34.05.570(3)(e); *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). Evidence is substantial if it would "'persuade a fair-minded person of the truth or correctness of the order.'" *King County v. Cent. Puget Sound Growth Mgmt. Hrg's. Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000) (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997). Because the substantial evidence standard is deferential, the evidence is viewed "'in the light most favorable to the party that prevailed in the highest forum exercising fact-finding authority.'" *Affordable Cabs, Inc. v. Emp't Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004) (quoting *Schofield v. Spokane County*, 96 Wn. App. 581, 586-87, 980 P.2d 277 (1999)). We will not substitute our judgment for the commissioner's with regard to witness credibility or the weight of evidence. *Id.*

*Disagreement with pay.* Mr. Boise testified at length that he quit because he was afraid of having his salary reduced if he failed to make $48,000 per month in sales. He told his branch manager he was quitting because he could not "afford to lose that [pay]." CP at 29. On his voluntary quit statement, he wrote that loss of salary, and "[r]eduction in pay and/or fringe benefits" were his reasons for quitting. CP at 64. The commissioner

13

also found he quit over dissatisfaction with Cleary's subcontract incentive program, but findings that he had more than one reason for quitting are not contradictory.

*Continued work.* The commissioner found that even if Mr. Boise did not read the payment plan when it was first presented to him, he "nonetheless was apprised of the employer's practice because he signed a document that explicitly referenced the markup." CP at 137. The exhibits support the finding. Mr. Boise testified in some instances to having seen the pay plan "the second week" of training and in other instances "the second day" of training. CP at 43, 45 ("second or third day"). Given his inconsistent statements, and viewing the evidence in the light most favorable to the department, substantial evidence supports the finding.

*Industry markup practice.* The commissioner found that it is "common in the construction industry" to mark up subcontractor bids. CP at 134-35. Cleary's witness, John Schinderle, testified to that effect, explaining the markup was part of the company's cost structure. While the commissioner acknowledged that Mr. Boise disputed Cleary's evidence of industry practice, she was not persuaded that Mr. Boise had refuted Cleary's evidence. We do not substitute our judgment for that of the agency fact finder on issues of credibility and weight of the evidence.

Substantial evidence supports three of the four challenged findings and Mr. Boise fails to demonstrate substantial prejudice from any shortfall in evidentiary support.

Affirmed.

14

No. 33202-1-III
*Boise v. Emp't Security*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, A.C.J.

15