IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHARLES HAUSE, an individual, | ) | |
| | ) | No. 39659-2-III |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPOKANE COUNTY, a Washington | ) | UNPUBLISHED OPINION |
| Municipal Corporation, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Charles Hause sues his former employer, Spokane County, for

wrongful termination of his employment under numerous causes of action. The Spokane

County sheriff fired Hause after Hause filed a workplace violence complaint and the

sheriff concluded that Hause misrepresented facts during the investigation of his

complaint. We affirm the superior court's summary judgment dismissal of Hause's

causes of action.

FACTS

We take the facts from affidavits filed in support of and in opposition to the

defendant Spokane County's summary judgment motion. Although we narrate some of

Spokane County's evidence, we view the facts in a light favorable to nonmoving party,

Charles Hause.

In January 2012, Spokane County hired Charles Hause as a forensic technician in the Spokane County Sheriff's Office. He processed latent fingerprints. In June of 2016, Hause was promoted to forensic specialist. Hause garnered a positive employment record and, in 2020, then-Sheriff Ozzie Knezovich awarded him a Medal of Merit.

During the time of Charles Hause's employment with the Spokane County Sheriff's Office, the county maintained employment policies compiled in the Spokane County Personnel Policy Manual. The manual applied to sheriff department employees, among other employees.

We quote some of the sections of the Spokane County Personnel Policy Manual important to Charles Hause's suit. Section 450 of the Personnel Policy Manual addressed protecting employees from retaliation for whistleblowing. The section sought to:

> encourage reporting by [the county's] employees and/or officers of improper governmental action taken by Spokane County officers or employees, and protect County employees and/or officers who have reported improper governmental actions in accordance with applicable laws.

Clerk's Papers (CP) at 521 (underlining omitted). Section 450 defined "improper governmental action" as:

> 1. "Improper governmental action" means any action by a Spokane County officer or employee:
> a. That is undertaken in the performance of the officer's or employee's official duties, whether or not the action is within the scope of the employee's employment; and

2

b. That (i) is in violation of any federal, state, or local law or rule, (ii) is an abuse of authority, (iii) is of substantial and specific danger to the public health or safety or (iv) is a gross waste of public funds.

"Improper governmental action" does not include personnel actions, including employee grievances, complaints, appointments, promotions, transfers, assignments, reassignments, reinstatements, restorations, reemployment, performance evaluations, reductions in pay, dismissal, suspensions, demotions, violations or collective bargaining or civil service laws, alleged violations of labor agreements or reprimands or actions taken pursuant to those statutory provision enumerated in RCW 42.4l .020(l)(b).

CP at 522. The same section also outlined the procedure for reporting improper

governmental conduct:

Procedures for Reporting

Spokane County employees, who become aware of improper governmental actions, whether within their office or another County office, should raise the issue first with their immediate supervisor. The immediate supervisor for any County employee hired or appointed by an elected official, other than the Board of County Commissioners or any of its department heads, shall be the elected official hiring or appointing the employee. The immediate supervisor for those employees hired by the Board of County Commissioners or any department head, shall be the department head of the office in which they are employed. For the purpose of this policy, a department head shall be defined as a person in charge of a major administrative division of County government under the direct control of the Board of County Commissioners, who reports directly to the County Administrative Officer. The employee shall submit a written report to the supervisor, or to a person designated by the supervisor, stating in detail the basis for the employee's belief that an improper governmental action has occurred. Where the employee reasonably believes the improper governmental action involves his or her immediate supervisor, the employee may raise the issue directly with the County Administrative Officer or such other person as may be designated by the County Administrative Office to receive reports of improper governmental action. Where the employee reasonably believes the improper governmental action involves the County Administrative Officer, the employee may raise the issue directly with the chairman of the

3

Board of County Commissioners.  Where the employee reasonably believes the improper governmental action involves a Spokane County Commissioner, the employee may raise the issue directly with the Spokane County Prosecuting Attorney.

. . . .

Spokane County employees who fail to make a good faith attempt to follow the County's procedures in reporting improper governmental action shall not receive the protection provided by the County in these procedures.

CP at 523-24.  The following subsection of Section 450 of the Spokane County Personnel Policy Manual identified whistleblower protections for county employees:

Protection Against Retaliatory Actions

Spokane County Elected Officials and employees are prohibited from taking retaliatory action against a County employee because he or she has in good faith reported an improper governmental action in accordance with these policies and procedures.

Employees who believe that they have been retaliated against for reporting an improper governmental action should advise their immediate supervisor, the Human Resources Director, or his/her designee.  The immediate supervisor or Human Resources Director shall take appropriate action to investigate and address complaints of retaliation.

CP at 524.

Section 605 of the Personnel Policy Manual housed the county's Workplace Violence Prevention Program.  Subsection VI-D of Section 605 directed employees to report known or suspected incidents of workplace violence.  Elsewhere in the manual the prevention program defined "workplace violence" as:

any behavior that is violent, threatens violence, coerces, harasses, intimidates others, interferes with an individual's legal rights of movement or expression, or disrupts the workplace of the [c]ounty's ability to provide services to the public.

4

CP at 512.  One example given of workplace violence was the throwing of objects.  CP

513.  Subsection VII A I of Section 605 declared:

> Workplace violence, threats of workplace violence, or observations of workplace violence shall be reported· immediately to the employee's immediate supervisor and the Risk Management Department.  A WVPP Incident Report Form shall be submitted to Risk Management.

CP at 244.

The Spokane County Sheriff's Office kept its own Policy Manual.  An

unnumbered opening section of the manual announced the expectation that a department

employee refrain from

> "pot stirring/rumor mongering-intentionally causing dissention/disruption."

CP at 175.  Section 340.3.5(g) of the manual barred:

> "[d]isparaging remarks or conduct to the extent that such remarks or conduct disrupts the efficiency of the [sheriff's] [d]epartment, subverts the good order, efficiency and discipline of the [d]epartment, or which would tend to discredit any member thereof."

CP at 175.  Section 340.4.5(h) prohibited:

> "[k]nowingly making false, misleading or malicious statements that are reasonably calculated to harm or destroy the reputation, authority or official standing of the [d]epartment or members thereof."

CP at 174 (some alterations in original).  Sheriff's office policy 1020.2.2(a) demanded

that

[a] department employee becoming aware of alleged misconduct
shall immediately notify a supervisor.
CP at 175.

During the employment of Charles Hause, Spokane County also employed Trayce Boniecki as a forensic specialist in the sheriff's office. Lieutenant Lyle Johnston supervised both Boniecki and Hause. Boniecki's employment record included negative reviews and evaluations. Hause occasionally complained about the work productivity, attendance, and team play of Boniecki. This appeal focuses on two purported acts of Boniecki: the throwing of a plastic water spray bottle and the "keying" of another employee's car. "Keying" refers to purposely scratching or gouging a car's paint with a key.

In February of 2020, Trayce Boniecki and coworker, Lynette Estridge, argued over the process of ordering spray bottles. Later, in frustration, Boniecki knocked an empty bottle from Estridge's desk. The bottle struck the outer cubicle of a coworker. Estridge was not present in the work area when this occurred.

Trayce Boniecki reported her argument with Lynette Estridge and the thumping of the water bottle to her direct supervisor, Lynn Johnston. Johnston verbally counseled Boniecki. Boniecki promised no similar incident would occur again.

On April 1, 2020, Lori Preuninger, a former employee in the Spokane County Sheriff's Office's forensic unit, reported to police that someone keyed her car in a county parking lot. The car suffered a long scratch. Security footage showed Trayce Boniecki

ambling by Preuninger's car.  Law enforcement and the Spokane County Sheriff's

Office's Internal Affairs office investigated the keying.  On July 9, 2020, the Spokane

City prosecutor announced that, while probable cause supported that Boniecki had

committed malicious mischief in the second degree, the prosecutor would file no charges

due to insufficient evidence to obtain a guilty verdict beyond a reasonable doubt.  The

Internal Affairs office's investigation ended with a verdict of "not sustained" due to

insufficient evidence.  Charles Hause was friends with Preuninger.

     In the spring of 2020, Charles Hause exercised family leave from work related to

the birth of a child.  In his deposition, Hause testified that, before taking family leave, he

criticized supervisors for poor supervision.  While on leave, Hause traded unsympathetic

text messages about Trayce Boniecki and sheriff's department officials with his coworker

John Schlosser.  He called Boniecki a "sociopath."  He wrote about Boniecki's work

performance:

> You can completely write off any work coming from her today.  Oh wait, that's every day.

CP at 140.  Hause wrote to Schlosser about Undersheriff John Nowels:

> . . . Nowels is a spineless coward who will just placate to the underperforming employees.

CP at 124.  Because his direct supervisor, Lyle Johnston, treated Boniecki well, Hause

commented about Johnston:

> [He] was drinking from the koolaid [sic].

7

CP at 677.  In August 2020, Hause texted about Boniecki and other coworkers:

> [W]hen I get back, I'm coming hard after them.  I made their life pretty miserable for my last 2 weeks there, and it's only going to get worse for them on my return.

CP at 138.

Charles Hause returned from family leave on September 8, 2020.  On September 9, Lieutenant Khris Thompson convened a meeting with the forensics unit staff.  Hause attended the meeting.  Thompson explained that the criminal and internal affairs investigations into Trayce Boniecki's conduct had ended and no criminal charges would be filed.  Also, the internal investigation had resulted in a finding of "'not sustained.'" CP at 151.  Thompson warned that anyone who retaliated against or rumor-mongered about Boniecki could be subject to discipline.

On September 18, 2020, Charles Hause filed a workplace violence complaint with the risk management department of Spokane County.  The complaint alleged that Trayce Boniecki violated sheriff's office policy when throwing a plastic water bottle in February 2020.  Hause did not send a copy of his complaint to his direct superiors. When drafting and filing the complaint, he consulted his union representative, Gordon Smith.

Steve Bartel of the risk management office investigated Charles Hause's complaint and concluded the incident did not rise to the level of workplace violence.  The risk management office then forwarded Hause's workplace violence complaint to the

8

Spokane County Sheriff's Office Internal Affairs division. The division assigned Lieutenant Khris Thompson to investigate. Thompson sought to discern whether supervisor Lyle Johnston knew of the bottle incident and, if so, whether Johnston properly handled the incident. In early October 2020, Thompson ended his investigation and reported to Spokane County Undersheriff John Nowles that months earlier Johnston, Trayce Boniecki's supervisor, learned of the water bottle incident and resolved the event by informal coaching, guidance, and direction to Boniecki.

Khris Thompson's report to Undersheriff John Nowles disquieted Nowles. Before filing the workplace violence complaint, Charles Hause had not notified supervisors or anyone in his chain of command at the sheriff's office of any workplace violence or that he intended to report Trayce Boniecki's conduct to the county risk management office. Boniecki allegedly threw the bottle in February 2020, but Hause did not submit his complaint until September 2020. Hause's workplace violence complaint insinuated that he saw Boniecki throw the water bottle. Thompson's investigation, however, established that Hause did not observe the purported tossing of the bottle. Hause's complaint identified coworker Lynette Estridge as a victim of the water bottle toss, but the investigation revealed she was no longer present when Boniecki knocked the bottle, and she not consider herself a victim.

On October 9, 2020, Spokane County Undersheriff John Nowles ordered an Internal Affairs investigation into whether the conduct of Charles Hause breached

9

sheriff's department polices 340.3.5(g), 340.4.5(h), and 1020.2.2(a). The policies precluded rumormongering and false reporting and required immediate reporting of another employee's misconduct. Nowells assigned Internal Affairs Investigator Lieutenant Andrew Buell to assist in the investigation of Hause.

On October 21, 2020, during the investigation of Charles Hause, Lieutenant Andrew Buell interviewed Hause. At that time, Hause stated that he had communicated only once with another forensic unit employee, John Schlosser. The Spokane County Sheriff's Office had information that Hause sent at least two text messages to Schlosser.

During the October 21 interview, Charles Hause first commented that, when preparing his workplace violence complaint, he consulted Spokane County policy manual and the Lexipol policy manual. Later, Hause admitted he had not reviewed the Lexipol policy manual. Lexipol, a national company, assists law enforcement agencies with risk management.

On December 15, 2020, during a second interview by Andrew Buell of Charles Hause, Hause again denied any communications with John Schlosser other than one conversation. Hause declined to show Buell text messages sent to Schlosser on Hause's private phone. As a result of the two interviews, the sheriff's department added an allegation of providing false or misleading statements in the charges against Hause.

After the completion of the investigation of Charles Hause, Undersheriff John Nowles compiled a report that he forwarded to Spokane County Sheriff Ozzie

Knezovich. In turn, Sheriff Knezovich convened a hearing with Hause and his union representative. Knezovich sustained each allegation. On three of the allegations, Knezovich imposed discipline less than employment termination, but, on the finding of supplying false or misleading statements to harm the reputation of another, Sheriff Knezovich imposed termination.

Charles Hause's union filed a grievance to the notice of employment termination with the Spokane County Human Resources Director, Ashley Cameron. After conducting a hearing, Director Cameron denied the grievance. Under Hause's collective bargaining agreement through his union, Hause could have filed an additional grievance, at which time an arbitrator from the State Public Employment Relations Commission would have resolved the dispute. The union elected not to file this second grievance.

PROCEDURE

In his initial complaint, Charles Hause asserted three causes of action against Spokane County: discrimination, if not retaliation, in violation of RCW 49.60, Washington Law Against Discrimination (WLAD); a violation of the State Employee Whistleblower Protection Act, RCW 42.40; and wrongful termination in violation of public policy. The first cause of action did not identify the form of discrimination allegedly perpetuated by Spokane County. The complaint did not mention any county action harming a particular race or gender.

11

In response to a request for production, Charles Hause produced for Spokane County the gaggle of text messages that he had sent to John Schlosser. During a deposition, Hause agreed that he never complained to Spokane County about any adverse action toward any discrete or insular group protected under the Washington Law Against Discrimination.

Following discovery, Charles Hause moved to modify his whistleblower claim to base it on sheriff's office and Spokane County policies and to switch his cause of action for whistleblower protection from the State Employee Whistleblower Protection Act, RCW 42.40, to the Local Government Whistleblower Protection Act, RCW 42.21. Hause also requested to add a cause of action for retaliation when engaging in union practices. The trial court denied Hause's request to assert an independent claim under RCW 42.41, the Local Government Whistleblower Protection Act, but permitted him to assert RCW 42.41 inside his cause of action for wrongful discharge in violation of public policy. Later, Hause sought to amend his complaint again to add a claim under WLAD for disparate treatment discrimination because of his gender. The trial court denied this motion.

Spokane County filed a motion for summary judgment. The superior court granted the motion and dismissed all causes of action.

No. 39659-2-III
*Hause v. Spokane County*


LAW AND ANALYSIS

Charles Hause assigns error to the superior court's summary dismissal of his four causes of action. He does not assign error to the superior court's partial denial of his motions to amend his complaint.

We review Charles Hause's appeal in the order of the causes of action discussed in his brief. Because Hause chooses the pronoun "he" for himself, we employ the male pronoun when using indefinite pronouns in our analysis.

We encounter difficulty in addressing the appeal because Charles Hause asserts arguments in his briefs not raised before the superior court. Hause brings related, but distinct, causes of action and various theories under one of his causes of action. Nevertheless, Hause sometimes does not discreetly address the causes of action or theories within one cause. He asks that this court rely on numerous statutes, but then does not analyze how some of the statutes apply to his circumstances.

We review a lower court's grant of summary judgment de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is appropriate, if, in viewing all facts in the light most favorable to the nonmoving party, no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Herron v. Tribune Pub. Co.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987). Likewise, if a plaintiff fails to establish the existence of an essential element, summary judgment is appropriate. *Young v. Key Pharmaceuticals*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

13

Wrongful Discharge in Violation of Public Policy

We first address the dismissal of Charles Hause's cause of action for wrongful termination in violation of public policy claim. At the common law, an employer could fire an employee at any moment and for any reason under the "at-will" doctrine. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996). Nevertheless, because of the power disparity between employer and employee under the at-will regime, most states have created a limited exception to punish employers who discharge employees in contravention of public policy. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935-36 (1996). The Washington Supreme Court first recognized such an exception in 1984 in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984).

Washington courts analyze causes of action for wrongful discharge in violation of public policy with two distinct analyses. *Martin v. Gonzaga University*, 191 Wn.2d 712, 723-25, 425 P.3d 837 (2018). The first, or original test, based on *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219 (1984) and *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991) identifies four employment actions traditionally characterized as conduct violating public policy and then applies a four-step burden shifting framework. Washington law generally, but not exclusively, limits claims for wrongful discharge in violation of public policy to the four categories:

14

>        (1) when the employer fires an employee for refusing to commit an illegal act;
>        (2) when the employer fires the employee for performing a public duty or obligation, such as serving jury duty;
>        (3) when the employer terminates the employment of the employee for exercising a legal right or privilege, such as filing workers' compensation claims; and
>        (4) when the employer discharges the employee in retaliation for reporting employer misconduct, known as whistle-blowing.

*Martin v. Gonzaga University*, 191 Wn.2d 712, 723 (2018). We label this conventional method as the common categories analysis. If a case does not fit within any of these four categories, the employee may still prevail but then the court must forego the common categories analysis and apply the Perritt test, named after a commentator who published a compendium of wrongful discharge in violation of public policy cases throughout the nation. *Martin v. Gonzaga University*, 191 Wn.2d 712, 723-24 (2018). Conversely, if a claim falls within one of the common categories, the Perritt test must not be applied. *Martin v. Gonzaga University*, 191 Wn.2d 712, 723-25 (2018).

Charles Hause seeks to defeat summary judgment dismissal of his wrongful discharge suit by both the common categories analysis and the Perritt test. Although the two approaches are mutually exclusive, we know of no reason why the employee may not alternatively plead each approach. We focus first on the common categories analysis. We explain and detail the Perritt test when we later explore its possible help to Hause.

15

No. 39659-2-III
*Hause v. Spokane County*

*Common Categories Analysis*

The common categories analysis constitutes a four-part framework for an employee making a prima facie case. The first two and the fourth steps impose a burden on the employee. The third fraction, only reached if the employee satisfies elements one and two, demands that the employer produce some evidence.

Under step one of the common categories analysis, an employee must show that his discharge may have been motivated by reasons that contravene a clear mandate of public policy. *Martin v. Gonzaga University*, 191 Wn.2d 712, 723 (2018); *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 577-78, 459 P.3d 371 (2020). The employee may establish the first prong of a clear mandate of public policy, a question of law, by the letter or purpose of a constitutional, statutory, or regulatory provision. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232 (1984); *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 579 (2020). Alternatively, prior judicial decisions may establish a clear mandate. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232 (1984). In *Danny v. Laidlaw Transit Services, Inc.*, 165 Wn.2d 200, 216-17, 193 P.3d 128, (2008), the Washington Supreme court wrote that, while the sources of public policy catalogued in *Thompson* include primary sources of public policy, public policy may come from other sources. Nevertheless, courts proceed cautiously to declare public policy absent prior legislative or judicial expression on the subject. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232 (1984).

16

If a plaintiff satisfies the first prong of a clear public policy, he must produce evidence of a causal link between the public-policy-related conduct and the discharge. *Martin v. Gonzaga University*, 191 Wn.2d 712, 725 (2018). A plaintiff's evidence may be direct or circumstantial. *Mackey v. Home Depot USA, Inc*., 12 Wn. App. 2d 557, 579 (2020). Once a plaintiff fulfills steps one and two, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. *Mackey v. Home Depot USA, Inc*., 12 Wn. App. 2d 557, 580 (2020). Importantly, the employer need not persuade the court that the discharge was actually motivated by this reason. *Mackey v. Home Depot*, *USA, Inc*., 12 Wn. App. 2d 557, 580 (2020). The burden is only one of production of evidence. *Martin v. Gonzaga University*, 191 Wn.2d 712, 726 (2018). Instead, the employer need only produce evidence which, taken as true, allows the conclusion that a legitimate reason motivated the firing. *Mackey v. Home Depot*, *USA, Inc*., 12 Wn. App. 2d 557, 580 (2020). If an employer does so, the burden shifts back to the plaintiff for the final step. We only address the first prong of the common categories analysis because of Hause's failure to present facts implicating a clear mandate of public policy.

Charles Hause asserts that his discharge fits within the second, third, and fourth common categories of wrongful discharge claims. We address the categories in such order.

Charles Hause claims that, in fulfillment of category two, public safety statutes and regulations and sheriff's office policies imposed on him a public duty or obligation to report violence. According to Hause, RCW 7.69.010 decrees that citizens have a civic and moral duty to voluntarily cooperate with law enforcement as witnesses. Hause emphasizes that a public employee bears a heightened duty to comply with the law because RCW 42.20.100 creates a misdemeanor for an official to willfully neglect his duties. He further asserts that the ethics in public service act erects a high standard on a public official to protect all people in Washington. Hause also forwards two Washington Industrial Safety and Health Act (WISHA) regulations, WAC 296-800-120 and WAC 296-800-12005, in support of his contention that the law demanded that he report Trayce Boniecki's conduct. In addition to RCW 7.69.010, RCW 42.20.100, the act, and the two workplace regulations, Hause relies on Spokane County Workplace Violence Policy 650 and Spokane County's Whistleblower Protection Policy 450. We analyze each of the directives forwarded by Hause.

RCW 7.69.010 recognizes a "civic and moral duty . . . of witnesses of crimes to fully and voluntarily cooperate with law enforcement." RCW 7.69.010 constitutes the legislature's statement of intent behind chapter 7.69 RCW, which lists the rights of crime victims, survivors, and witnesses. We question the enforceability of RCW 7.69.010 against someone who refuses to cooperate with law enforcement. The statute refers to a civic and moral duty, not a legal or enforceable obligation as asserted by Charles Hause.

Regardless, Hause does not argue he witnessed a crime. More importantly, he never cooperated with any law enforcement investigation.

Charles Hause references the ethics in public service act, chapter 42.52 RCW. The act applies only to state employees. RCW 42.52.010(1). The act imposes no duties on county employees.

The two WISHA regulations cited by Charles Hause, WAC 296-800-120 and WAC 296-800-12005, require employees to protect the lives and safety of other employees. The first rule reads:

> You must play an active role in creating a safe and healthy workplace and comply with all applicable safety and health rules.
> **Note:** Employees may discuss and participate in any WISHA safety and health related practice and may refuse to perform dangerous tasks without fear of discrimination. Discrimination includes: Dismissal, demotion, loss of seniority, denial of a promotion, harassment, etc. (see chapter 296-360 WAC, Discrimination) pursuant to RCW 49.17.160 for a complete description of discrimination and the department's responsibility to protect employees.

WAC 296-800-120 (alterations in original). The second regulation declares in part:

> Employees must:
> (1) Study and follow all safe practices that apply to their work.
> (2) Coordinate and cooperate with all other employees in the workplace to try to eliminate on-the-job injuries and illnesses.
> . . . .
> (10) Do everything reasonably necessary to protect the life and safety of employees.

WAC 296-800-12005.

We reject Charles Hause's argument based on WISHA statutes and rules. Hause did not assert the statutes and rules before the superior court. Appellate courts generally will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Additionally, WISHA rules do not mention workplace violence.

We also hold that no question of fact arises as to Spokane County's liability based on a clear public policy as a result of employment and workplace policies. In Washington, the right or obligation imposed on the whistleblower, for purposes of common category two, must be established by law, and internal policies do not create law. *Joyce v. State*, 155 Wn.2d 306, 323, 119 P.3d 825 (2005); *Melville v. State*, 115 Wn.2d 34, 39-40, 793 P.2d 952 (1990). Any duty placed on Charles Hause by reason of the Spokane County Personnel Policy Manual or the Spokane County Sheriff's Office's policies are irrelevant to tort liability.

We move to category three of the common categories analysis, which involves exercising a legal right or privilege rather than complying with a public duty. According to Charles Hause, various labor statutes and regulations and Spokane County policies granted him a right to complain about Trayce Boniecki's conduct. Hause argues further that, under *Duncan v. Alaska USA Federa Credit Union, Inc.*, 148 Wn. App. 52, 60, 199 P.3d 991 (2008), the policies constituted promises of specific treatment in specific situations such that his employment contract incorporated the policies.

Charles Hause advances that RCW 49.17.160(1) prohibits retaliation against employers reporting workplace safety and health issues. RCW 49.17.160, a lengthy statute, declares in part:

> (1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to *this chapter*, or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or herself or others of any right afforded by this chapter. Prohibited discrimination includes an action that would deter a reasonable employee from exercising their rights under this chapter.
> (2) Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of this section may, within 90 days after such violation occurs, file a complaint with the director alleging such discrimination. The department may, at its discretion, extend the time period on recognized equitable principles or due to extenuating circumstances.
> (3) Within 90 days of the receipt of the complaint filed under this section, the director shall notify the complainant and the employer of his or her determination under subsections (4) and (5) of this section unless the matter is otherwise resolved. The department may extend the period by providing advance written notice to the complainant and the employer setting forth good cause for an extension of the period, and specifying the duration of the extension.
> (4)(a) If the director determines that the provisions of this section have been violated, the director will issue a citation and notice of assessment describing the violation to the employer, ordering all appropriate relief, and may assess a civil penalty.
> . . . .
> (5) If the director finds there is insufficient evidence to determine that the provisions of this section have been violated, the director will issue a letter of closure and the employee may institute the action on his or her own behalf within 30 days of such determination. In any such action the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this section and order all appropriate relief including

21

rehiring or reinstatement of the complainant to his or her former position
with back pay.

(Emphasis added.) "This chapter" referenced in RCW 49.17.160(1) is chapter 49.17

RCW, the WISHA.

In his appellate brief, Charles Hause asserts protection under RCW 49.17.160(1)

but he supplies no analysis as to the applicability of the statute. Hause forwards no facts

that he filed a complaint under or related to chapter 49.17 RCW as demanded by RCW

49.17.160(1). Hause does not suggest that the director of the Department of Labor &

Industries issued a letter authorizing him to file suit, as required by RCW 49.17.160(5).

Charles Hause cites three Washington Department of Labor & Industries

regulations in support of his wrongful discharge claim. According to Hause, WAC 296-

800-11010, WAC 296-800-120, and WAC 296-800-12005(10) advance workplace safety

and entitle him to assist in achieving work safety without fear of retaliation. WAC 296-

800-11010 provides:

> You [the employer] must provide and use safety devices,
> safeguards, and use work practices, methods, processes, and means that
> are reasonably adequate to make your workplace safe.
> . . . .
> (4) You must do everything reasonably necessary to protect the life
> and safety of your employees.

WAC 296-800-120 reads:

> You must play an active role in creating a safe and healthy
> workplace and comply with all applicable safety and health rules.

22

WAC 296-800-12005(10) declares:

> Employees must:
> . . . .
> (10) Do everything reasonably necessary to protect the life and
> safety of employees.

As with RCW 49.17.160, Hause summarily cites the regulations but fails to analyze the three rules. The Director of the Department of Labor & Industries promulgated the three rules pursuant to her authority under chapter 49.17 RCW; thus, we conclude that Hause needed to follow the procedures under the chapter in order to rely on the regulations.

Charles Hause also forwards chapter 41.56 RCW as a basis for Spokane County liability under the third common category. He argues the RCW chapter affords one the right to consult with his union free of interference or retaliation. Although Hause inserts union activity protection under the rubric of the tort of wrongful discharge, he also asserts a free-standing claim for union retaliation. We reserve our analysis under chapter 41.56 RCW for later.

Finally, in support of his quest for redress under the third common category for wrongful discharge, Charles Hause identifies Spokane County Personnel Policy Manual polices 450 and 650. We previously quoted the policies. As already written, employment policies do not grant Hause a legal right or privilege because they are not law. Unlike administrative rules and other formally promulgated agency regulations, internal policies and directives generally do not create law. *Joyce v. State*, 155 Wn.2d

23

306, 323 (2005); *Melville v. State*, 115 Wn.2d 34, 39-40 (1990). Going further, public policy cannot be clearly established by an employer's internal polices, even if that employer is a county, because the state legislature holds the prerogative of announcing public policy. *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001).

Even if internal employer policies constituted law, Charles Hause would need to prove that he complied with the requirements of the policies to gain protections. He never timely reported purported misbehavior or conveyed his complaint to the correct Spokane County official.

Charles Hause contends policies 450 and 650 became enforceable as part of his employment agreement. Hause did not assert this position before the superior court, so we do not entertain the contention on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926 (2007).

The final common category asserted by Charles Hause is category four, reporting employer misconduct. Hause claims his superiors acted wrongfully, under chapter 42.41 RCW and WISHA rules, by failing to protect employees from workplace violence when declining to report the water bottle throwing to Spokane County's Risk Management department. Chapter 42.41 RCW is the Local Government Whistleblower Protection Act.

In *Keenan v. Allan*, 91 F.3d 1275, 1281 (9th Cir. 1996), the Ninth Circuit observed that chapter 42.41 RCW likely establishes a clear mandate of public policy to encourage

good faith reporting of improper governmental action to the appropriate bodies. Charles

Hause did not report conduct constituting improper governmental action, however.

Instead, he only reported dissatisfaction with the investigation and appropriate discipline

of a coworker. RCW 42.41.020 defines improper governmental action as violation of law

or rule, but exempts personnel actions including employee grievances, complaints,

suspensions, and demotions from the statute's coverage. In *Dewey v. Tacoma School

District No. 10*, 95 Wn. App. 18, 974 P.2d 847 (1999), this court rejected the claim of an

employee who expressed dissatisfaction with a supervisor's employee dispute resolution

because it did not constitute whistleblowing activity.

*Perritt Test*

We move to the alternate Perritt test. The Perritt test elements substantially mirror

those of the common categories analysis. The Perritt test has four factors:

> "(1) The plantiff must prove the existence of a clear public policy
> (the clarity element); (2) The plaintiffs must prove that discouraging the
> conduct in which he engaged would jeopardize the public policy (the
> jeopardy element); (3) The plaintiffs must prove that the public-policy-
> linked conduct caused the dismissal (the causation element); and (4) The
> defendant must not be able to offer an overriding justification for the
> dismissal (the absence of justification element)".

*Martin v. Gonzaga University*, 191 Wn.2d 712, 723 (2018) (*quoting Gardner v. Loomis

Armored, Inc.*, 128 Wn.2d 931, 941 (1996)) (emphasis and citations omitted). The

Washington Supreme Court has noted the Perritt test was not intended to substantially

change or replace the common law tort, but supplements it for unique circumstances. *Martin v. Gonzaga University*, 191 Wn.2d 712, 724 (2018).

Similar to the first prong of a typical prima facie wrongful discharge claim under the common categories analysis, the discernment of a clear mandate of public policy under the first factor of the Perritt test invokes a question of law. *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989); *Korslund v. Dyncorp Tri-Cities Services, Inc.*, 121 Wn. App. 295, 319, 88 P.3d 1002 (2004), *aff'd* 156 Wn.2d 168, 125 P.3d 119 (2005). Nevertheless, the jeopardy and causation elements are questions of fact. *Ellis v. City of Seattle*, 142 Wn.2d 450, 463, 13 P.3d 1065 (2000). To establish the jeopardy element mentioned in factor two, an employee must prove he engaged in conduct directly related to the public policy or in conduct necessary for its effective enforcement. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 945 (1996). This requires both that an employee show the inadequacy of alternative means to promote the policy and that the threat of dismissal will discourage others from engaging in conduct society deems desirable. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 945 (1996). To establish the causation element of factor three, an employee must present sufficient evidence of a nexus between his discharge and alleged public policy violations. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 179, 876 P.2d 435 (1994). If an employee proves a question of fact as to the jeopardy and causation elements, the burden shifts to the defendant to "show an overriding justification for [the plaintiff's discharge]." *Korslund*

*v. Dyncorp Tri-Cities Services, Inc.*, 121 Wn. App. 295, 322 (2004) (alteration in

original).  In adopting the fourth factor, absence of justification, the Washington Supreme

Court expressed that, in some instances, weak public policies must yield to the

independence of an employer's management of personnel.  *Gardner v. Loomis Armored,

Inc.*, 128 Wn.2d 931, 947 (1996).  Therefore, even if an employee's discharge

contravenes an existing public policy, courts may still reject it.  *Gardner v. Loomis

Armored, Inc.*, 128 Wn.2d 931, 947 (1996).

Spokane County argues that Charles Hause fails to present facts to support any of

the four elements of the Perritt test.  Because we conclude that Hause fails to satisfy the

clarity element as a matter of law, we do not address the other three parts to the test.

Charles Hause asserts the existence of a clear mandate of public policy to protect

reporters of workplace violence from retaliation and another to generally protect

government whistleblowers from the same.  We do not know why category four of the

common categories analysis does not subsume this contention.

Charles Hause claims the public policy of protecting reporters of workplace

violence arises from the Washington State and Local Whistleblower Protection Acts,

WISHA statutes and regulations, prior judicial opinions, and Spokane County workplace

policies.  Hause cites unpublished opinion *Ng-A-Qui v Fluke Corp.*, No. 83839-I, slip op.

at 5, (Wash. Ct. App. Jan. 17, 2023) to support his contention that WISHA's anti-

retaliation provisions establish a clear mandate of public policy to create safety and

health in the workplace. Hause also cites *Karstetter v. King County Corrections Guild*, 193 Wn.2d 672, 687, 444 P.3d 1185 (2019), wherein the court held Washington public employee whistleblower statutes established a clear mandate of public policy to protect whistleblowers who report violations of law. Although he cites no case law, Hause asserts that the finding of a clear mandate of public policy under the State Whistleblower Protection Act extends to RCW 42.41, the Local Whistleblower Protection Act.

Charles Hause cannot establish a clear mandate of public policy. As discussed earlier, Spokane County Personnel Policy Manual policies 450 and 650 do not suffice as law for purposes of wrongful discharge in violation of public policy. Hause cannot use the whistleblower statutes because he is neither a state employee, nor would he qualify for protections because he did not report improper government conduct. WISHA cannot establish the clear mandate of public policy Hause claims it does. Workplace violence does not fall under the rubric of WISHA.

We reject the use of *Ng-A-Quinn v. Fluke Corporation* as establishing a clear public mandate because the decision is unpublished. Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court. RAP 14.1(a). *Karstetter v. King County Corrections Guild*, 193 Wn.2d 672 (2019) does not help because it involved a potential violation of law, not internal policy.

Charles Hause relies on RCW 42.41, the Local Government Whistleblower Protection Act. Under RCW 42.41.030:

28

(1) Every local government employee has the right to report to the appropriate person or persons information concerning an alleged improper governmental action.

(2) The governing body or chief administrative officer of each local government shall adopt a policy on the appropriate procedures to follow for reporting such information and shall provide information to their employees on the policy. Local governments are encouraged to consult with their employees on the policy.

(3) The policy shall describe the appropriate person or persons within the local government to whom to report information and a list of appropriate person or persons outside the local government to whom to report. The list shall include the county prosecuting attorney.

RCW 42.41.020 defines "improper governmental action" for purposes of RCW 42.41:

(1)(a) "Improper governmental action" means any action by a local government officer or employee:

(i) That is undertaken in the performance of the officer's or employee's official duties, whether or not the action is within the scope of the employee's employment; and

(ii) That is in violation of any federal, state, or local law or rule, is an abuse of authority, is of substantial and specific danger to the public health or safety, or is a gross waste of public funds.

(b) "Improper governmental action" does not include personnel actions including but not limited to employee grievances, complaints, appointments, promotions, transfers, assignments, reassignments, reinstatements, restorations, reemployments, performance evaluations, reductions in pay, dismissals, suspensions, demotions, violations of the local government collective bargaining and civil service laws, alleged labor agreement violations, reprimands, or any action that may be taken under chapter 41.08, 41.12, 41.14, 41.56, 41.59, or 53.18 RCW or RCW 54.04.170 and 54.04.180.

RCW 42.41.040 creates a process for alleged retaliation resulting from whistleblowing.

(1) It is unlawful for any local government official or employee to take retaliatory action against a local government employee because the

29

employee provided information in good faith in accordance with the provisions of this chapter that an improper governmental action occurred.

(2) In order to seek relief under this chapter, a local government employee shall provide a written notice of the charge of retaliatory action to the governing body of the local government that:

(a) Specifies the alleged retaliatory action; and

(b) Specifies the relief requested.

(3) The charge shall be delivered to the local government no later than thirty days after the occurrence of the alleged retaliatory action. The local government has thirty days to respond to the charge of retaliatory action and request for relief.

(4) Upon receipt of either the response of the local government or after the last day upon which the local government could respond, the local government employee may request a hearing to establish that a retaliatory action occurred and to obtain appropriate relief as defined in this section. The request for a hearing shall be delivered to the local government within fifteen days of delivery of the response from the local government, or within fifteen days of the last day on which the local government could respond.

(5) Within five working days of receipt of the request for hearing, the local government shall apply to the state office of administrative hearings for an adjudicative proceeding before an administrative law judge. Except as otherwise provided in this section, the proceedings shall comply with RCW 34.05.410 through 34.05.598.

RCW 42.41.050 exempts local governments that adopt a similar whistleblower retaliation

procedure from the coverage of RCW 42.41:

Any local government that has adopted or adopts a program for reporting alleged improper governmental actions and adjudicating retaliation resulting from such reporting shall be exempt from this chapter if the program meets the intent of this chapter.

Under RCW 42.41, local employees are entitled only to administrative remedies,

subject to judicial review thereafter. RCW 42.41.40; *Woodbury v. City of Seattle*, 172

Wn. App. 747, 752-53, 292 P.3d 134 (2013). Moreover, local governments that adopt

reporting programs for improper governmental action and establish adjudication

procedures for retaliation are exempted from chapter 42.41 RCW if those programs meet

the intent of the chapter. RCW 42.41.050. Spokane County's internal polices mirrored

the remedies under chapter 42.41 RCW.

Neither the letter nor the spirit of Local Employee Whistleblower Protection Act

apply to Charles Hause's circumstances. Hause's workplace violence complaint did not

fall within "improper governmental action" as defined in RCW 42.41.020(1). Hause's

complaints concerned his supervisor's actions or inactions that formed personnel actions.

Hause failed to follow reporting procedures under both the act and Spokane County

internal policies. He delayed six months in reporting the incident after the sheriff's

department handled the incident.

Washington Law Against Discrimination

RCW 49.60.030, a portion of the Washington Law Against Discrimination,

recognizes an employee's "right to be free from discrimination because of race, creed,

color, national origin, citizenship or immigration status, sex, honorably discharged

veteran or military status, sexual orientation, or the presence of any sensory, mental, or

physical disability or the use of a trained dog guide or service animal by a person with a

disability." RCW 49.60.210 governs WLAD retaliation claims. The statute declares:

31

> (1) It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.
> (2) It is an unfair practice for a government agency or government manager or supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW.

To establish a prima facie case of retaliatory discharge under the statute, an employee must show he engaged in a statutorily protected opposition activity; his employer subjected him to an adverse employment action; and a causal connection lies between the opposition and the discharge. *Allison v. Housing Authority of City of Seattle*, 59 Wn. App. 624, 626-27, 799 P.2d 1195 (1990), *aff'd* 118 Wn.2d 79, 821 P.2d 34 (1991). If the employee fails to satisfy the first element, the claim fails because the statute only protects opposition directed toward practices forbidden by chapter 49.60 RCW. *Coville v. Cobarc Services, Inc.*, 73 Wn. App. 433, 440, 869 P.2d 1103 (1994).

Washington State has liberal pleading rules that only demand that the plaintiff give the court and opponent notice of the general nature of the claim asserted. *Lewis v. Bell*, 45 Wn. App. 192, 197, 724 P.2d 425 (1986). Nevertheless, a pleading may be insufficient if it does not give the opposing party fair notice of the identity of the claim and the ground on which the claim rests. *Dewey v. Tacoma School District No. 10*, 95 Wn. App. 18, 23 (1999). A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into briefs and contending it

was in the case all along. *Molloy v. City of Bellevue*, 71 Wn. App. 382, 385-86, 859 P.2d 613 (1993).

In both his original and amended complaints, Charles Hause alleged Spokane County retaliated against him for reporting wrongdoing. In his response to the summary judgment motion, however, and now on appeal, Hause asserts he experienced disparate treatment because he was male. Nevertheless, retaliation and discrimination are different causes of action governed by separate provisions of chapter 49.60 RCW. Hause cannot now rely on a straight discrimination claim.

Charles Hause does not present a prima facie showing of retaliation under RCW 49.60.210 because he did not engage in opposition activity. During a deposition, Hause stated he had never complained about any discrimination based on any of the categories protected by RCW 49.60.030. Similarly, his lawsuit complaint made no mention of any protected rights or groups. Instead, Hause complained of workplace violence.

On appeal, Charles Hause claims his complaint caused him to be subjected to discrimination because he is male. To get protections under RCW 49.60.210, however, his workplace violence complaint must have been in opposition to disparate treatment, not the impetus for the disparate treatment.

### Union Activity

Charles Hause assigns error to the trial court's grant of summary judgment on his RCW 41.56.140 claim either as a separate cause of action or under the umbrella of

33

wrongful discharge in violation of public policy. Hause contends (1) he established a

prima facie showing that he was engaged in collective bargaining at the time of his

termination, and (2) Spokane County interfered with the protections granted to him by

chapter 41.56 RCW.

RCW 41.56.040 declares:

> No public employer, or other person, shall directly or indirectly,
> interfere with, restrain, coerce, or discriminate against any public employee
> or group of public employees in the free exercise of their right to organize
> and designate representatives of their own choosing for the purpose of
> collective bargaining, or in the free exercise of any other right under this
> chapter.

RCW 41.56.140 provides:

> It shall be an unfair labor practice for a public employer:
> (1) To interfere with, restrain, or coerce public employees in the
> exercise of their rights guaranteed by this chapter;
> (2) To control, dominate, or interfere with a bargaining
> representative;
> (3) To discriminate against a public employee who has filed an
> unfair labor practice charge;
> (4) To refuse to engage in collective bargaining with the certified
> exclusive bargaining representative.

Under RCW 41.56.140(1), an employer commits interference if it engages in

conduct which can reasonably be perceived by employees as a threat of reprisal or a

promise of benefit deterring them from pursuit of lawful union activity. *Clallam County*

*v Washington State Public Employment Relations Commission*, 43 Wn. App. 589, 599-

600, 719 P.2d 140 (1986). Similarly, an employer can also violate RCW 41.56.140(1) if

it discharges an employee for engaging in the protected legal right of pursuing a grievance. *Clallam County v Public Employment Commission*, 43 Wn. App. 589, 599-600 (1986). If a plaintiff asserts this type of claim, he must prove he filed a grievance and his pursuit of it motivated the employer in discharging him. *Clallam County v. State Public Employment Relations Commission*, 43 Wn. App. 589, 599-600 (1986).

Charles Hause asserts that Spokane County violated RCW 41.56.040 and .140 by interfering with the exercise of his collective bargaining rights and retaliating against him for exercising those rights. Hause emphasizes that he filed his workplace violence complaint on the advice, and direction, of his union representative, Gordon Smith. He characterizes Smith's advice as union activity to protect union members and their workplace safety. According to Hause, his filing of the workplace violence complaint constituted the beginning of the grievance process protected by his collective bargaining agreement.

No statute or caselaw supports the argument that the workplace violence complaint started the grievance process. The argument contradicts the facts that Hause neither filed a grievance before the alleged retaliation nor had any action to grieve under his collective bargaining agreement before employment termination.

Charles Hause cites *Clallam County v. Public Employment Relations Commission*, 43 Wn. App 589 (1986). In *Clallam County*, this court reversed the trial court and reinstated an administrative determination that an employee was fired for engaging in

protected conduct. The court ruled that a verbal complaint raised by employee Baker constituted a grievance under his collective bargaining agreement because the agreement allowed for a verbal complaint. The court reasoned that, because chapter 41.56 RCW requires the implementation of a grievance process, the pursuit of the grievance constituted a protected right.

*Clallam County* does not control Charles Hause's appeal. Hause presents no evidence that his collective bargaining agreement expressly allowed for verbal grievances. Just as important, Hause filed his formal written grievance only after his employment termination. Spokane County policy, not the collective bargaining agreement, governed Hause's workplace violence complaint. The employment policy is unrelated to union rights and applies to all county employees regardless of union representation.

Charles Hause is not appealing a trial court's revision of an administrative decision. Unlike the employee in *Clallam County*, Hause brought this suit independently after retracting his grievance.

Charles Hause claims that his union representative helped him to complete the workplace violence complaint. In his briefing, however, he does not explain how Spokane County interfered in the representative's assistance with the complaint, let alone interfered in any other union assistance or activity.

No. 39659-2-III
*Hause v. Spokane County*

## CONCLUSION

We affirm the summary judgment dismissal of all of Charles Hause's causes of action.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, C.J.                  Pennell, J.

37